STATE OF NEBRASKA, APPELLEE, V. JOEL R. EVANS, APPELLANT.
359 N.W.2d 790

Filed December 21, 1984.   No. 84-351.

Jerry L. Soucie of Rehm & Bartling, for appellant.

Paul L. Douglas, Attorney General, and L. Jay Bartel, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

The defendant, Joel R. Evans, has appealed from an order denying him post conviction relief.

The proceeding in the district court involved four separate cases. The records in all of these cases demonstrate overwhelming evidence of defendant's guilt.

The information in case No. 43863 alleged two counts of robbery; two counts of use of a firearm in the commission of a felony; and one count of possession of a firearm by a felon. The jury found the defendant guilty on all counts.

Case No. 43868 involved one count of robbery. Case No. 43870 involved one count of robbery and use of a firearm in the commission of a felony. These cases were consolidated for trial, and the jury found the defendant guilty on all counts.

Case No. 43869 involved one count of robbery and use of a firearm in the commission of a felony. The defendant entered pleas of guilty in this case, and charges involving five other armed robberies were dismissed.

The defendant perfected appeals to this court in all four cases. The record in each case was examined by this court and found to be free of prejudicial error. Motions to withdraw filed by his counsel were sustained and the judgments affirmed on July 8, 1981.

In this proceeding the defendant contends that the trial court erred in failing to find (1) that the appellant was denied effective assistance of counsel; (2) that the appellant was incompetent at the time of the offenses and at trial; (3) that appellant's trials were tainted by identifications based on unnecessarily suggestive procedures; and (4) that the sentences imposed were cruel and unusual.

In case No. 43863 the record shows that at around 9 p.m. on April 27, 1980, the defendant entered Jack and Mary's Restaurant in Omaha, Nebraska. He walked through the restaurant to a restroom, then came back to a counter in the front and handed Mary Wollen a note which stated: "This is a robbery, don't be stupid." Believing the defendant was pressing a gun to her side, Mrs. Wollen placed all the $5 bills that were in the cash register in a paper sack. The defendant took the sack and then turned to a waitress, Elsie Smith, placed a short silver gun against her stomach, and demanded her tip money. She gave him $10 to $15. The defendant left through the front door, and as he ran out, was seen by Jack Wollen heading toward the Papio Creek.

Based on a description of the robber given to police, a deputy sheriff stopped the defendant after he was seen crossing a field behind the restaurant. The defendant was arrested, and when searched, a loaded .22-caliber chrome-plated handgun and $147.88, including a roll of $5 bills, were found in his possession. The defendant was then taken back to Jack and Mary's, where he was separately identified by each of the Wollens. Later that same evening, Elsie Smith identified the defendant in a four-man lineup.

At a conference prior to trial the trial judge explained to defendant his alternatives concerning a suppression hearing regarding the one-on-one showups and lineups involved; defendant and his counsel expressly waived any suppression of identification.

In case No. 43868 the robbery took place at Gorat's Steak House in Omaha, Nebraska, on April 25, 1980. The defendant handed a note demanding money to the cashier, Marcella Gray, then ran out the front door with the money in a paper sack. A customer, Robert Stultz, saw the defendant as he was running out. Stultz identified the defendant at a preliminary hearing and in court at trial. Gray identified the defendant at a three-man lineup, the preliminary hearing, and in court at trial.

In case No. 43870 the record shows that on April 17, 1980, at approximately 2:30 p.m., the defendant entered a Village Inn Pancake House in Omaha, Nebraska, and asked Marcelino Sanchez about a cook's job. He then went into the restroom and

returned to the counter, where he gave Sanchez a note demanding money and showed Sanchez a gun. An employee, Judi Kirk, witnessed the robbery.

Sanchez identified the defendant at a three-man lineup. He also identified the defendant at a preliminary hearing and in court at trial. Judi Kirk identified the defendant at the preliminary hearing and in court at trial.

The sentences imposed in all four cases add up to imprisonment for 45 to 80 years.

In his first assignment of error the defendant alleges that he was denied effective assistance of counsel at both the trial and appellate levels. As to the actions of trial counsel which premise this allegation, defendant cites counsel's failure to move to suppress in-court and out-of-court identifications "that were tainted by suggestive line-ups," and failure to obtain psychiatric examinations to determine the appellant's mental status at the time of the offense and at trial. The defendant contends that appellate counsel failed "to properly brief the issues on the tainted identifications, prosecutor's comments on the defendant's right to remain silent, and excessiveness of sentence." Brief for Appellant at 3-4.

There is nothing in the record to support the defendant's claim that the prosecutor commented on the defendant's right to remain silent, and the assignment is not discussed in his brief.

In *State v. Robinson, ante* p. 156, 352 N.W.2d 879 (1984), we set forth at length the rules generally with regard to a claim of ineffective assistance of counsel. Essentially, there is a two-part test for determining whether an attorney has effectively counseled a criminal defendant:

"First, counsel must perform at least as well as one with ordinary criminal law skill and training in his or her region. Counsel must also conscientiously protect his client's interests. *State v. Leadinghorse,* 192 Neb. 485, 222 N.W.2d 573 (1974); *State v. Lang,* 202 Neb. 9, 272 N.W.2d 775 (1978). A defendant challenging competency of counsel has the burden to establish it. *State v. Auger & Uitts,* 200 Neb. 53, 262 N.W.2d 187 (1978). In addition, defendant must show that he suffered prejudice in the defense of his case as a result of his attorney's actions or

inactions. *State v. Mays*, 203 Neb. 487, 279 N.W.2d 146 (1979); *State v. Lang, supra; State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977)."

*State v. Otey*, 212 Neb. 103, 105-06, 321 N.W.2d 453, 454-55 (1982).

The record shows that in the Jack and Mary's robberies, trial counsel considered and discussed with defendant the alternative of making a motion to suppress. The trial court explained the motion to the defendant and emphasized the attorney's responsibility concerning the motion: "He doesn't have to make it, and he might consider it better not to, and I don't mean to inquire into his trial tactics. I just want you to be aware of the fact that he could make such a motion . . . ." Thereafter, the defendant and trial counsel waived the right to file a motion to suppress, and defendant stated specifically that he agreed with his counsel's judgment.

One cannot elect a particular trial strategy and then complain if it proves unsuccessful. *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977). Furthermore, even if a motion to suppress concerning the one-on-one showups complained of at Jack and Mary's Restaurant would have been sustained, there was no objection to the identification of the defendant made by Elsie Smith. Thus, it does not appear that the result of the trial would have been changed.

Defendant further questions trial counsel's failure to file a motion to suppress concerning the three-man lineups in the Village Inn and Gorat's robberies. Again, there were ample other eyewitness identifications made at those trials such that it cannot be said that the defendant was prejudiced by any alleged omissions of counsel in that regard.

The defendant also challenges the effectiveness of trial counsel in not obtaining psychiatric examinations of defendant. In the petition for post conviction relief, the defendant alleged that the crimes "were part of a continuing course of conduct on the part of the defendant who had a history of drug and alcohol dependency, was suffering from diminished capacity, brain damage, and was legally incompetent at the time of the acts which constitute the offenses charged."

At the post conviction hearing trial counsel testified that defendant took an active part in the defense of his case and did not appear to be under the influence of drugs or alcohol or anything of that nature.

" 'The test of mental competency to stand trial is whether the defendant now has the capacity to understand the nature and object of the proceedings against him, to comprehend his own condition in reference to such proceedings, and to make a rational defense.' " *State v. Teater*, 217 Neb. 723, 724, 351 N.W.2d 60, 62 (1984). There is no showing that the defendant failed this test.

A review of the record shows no credible evidence indicating defendant's lack of competency. In its final order the trial court aptly stated: "Inasmuch as there was no indication of defendant's incompetence to stand trial, defendant's trial counsel could hardly be found to be ineffective for failure to have defendant examined in this regard."

In sum, the defendant failed to sustain his burden with regard to the two-part test. This is equally true as applied to appellate counsel.

We considered the merits of the appeals before sustaining appellate counsel's motions to withdraw. In *State v. Robinson, ante* p. 156, 159, 352 N.W.2d 879, 881 (1984), we said:

" '[I]f competent counsel, after investigation, considers a point worthless, the fact that he is court-appointed does not require him to pursue it. * * * the right to counsel * * * does not include the right to counsel, whether at counsel's expense or government expense, to advance a totally frivolous claim merely because some layman thinks it has merit. . . .' "

The defendant's last assignment of error is that his punishment was cruel and unusual. He classifies his sentences as "preventive detention" as opposed to those tending "to punish or rehabilitate"; he also complains of the length of time he must spend in prison before he is eligible for parole. Defendant concedes, however, and this court has often stated before, that matters which relate to sentences imposed within statutory limits are not a basis for post conviction relief. *State v. Webb, ante* p. 238, 352 N.W.2d 624 (1984).

The judgment of the district court is affirmed.

AFFIRMED.