IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. VALDEZ

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

MIKE H. VALDEZ, APPELLANT.

Filed December 11, 2018.    No. A-17-1114.

Appeal from the District Court for Scotts Bluff County: LEO P. DOBROVOLNY, Judge.
Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

MOORE, Chief Judge, and PIRTLE and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Mike H. Valdez appeals his convictions of robbery, use of a weapon (other than a firearm) to commit a felony, and possession of a weapon (other than a firearm) by a prohibited person. Valdez contends that (1) the district court erred in denying his motion for a new trial, (2) the district court erred in not allowing defense counsel to withdraw from the case, (3) the evidence was insufficient to support his convictions, (4) his trial counsel was ineffective, and (5) the sentences imposed were excessive. Finding no merit to the arguments raised by Valdez on appeal, we affirm.

## II. STATEMENT OF FACTS

At trial, the State's witnesses testified as follows: In January 2017, Valdez entered an apartment and confronted Taylor Sestak, who was one of the guests visiting the apartment. Valdez was upset that Sestak was listed as a witness on "paperwork" relating to an alleged assault by

- 1 -

Valdez against Jessica Dillon the previous April. Valdez pulled a machete with a 2½-foot blade and lunged at Sestak. Valdez eventually asked Sestak if he had any drugs on him and Sestak admitted that he had 1 gram of methamphetamine. Valdez demanded Sestak give him half of the methamphetamine.

As a result of this incident, Valdez was charged with robbery, use of a deadly weapon (other than a firearm) to commit a felony, and possession of a deadly weapon (other than a firearm) by a prohibited person. Counsel was appointed to represent Valdez. A little more than 5 months following counsel's appointment, Valdez' trial counsel filed a motion to withdraw for the reason that there had "been a breakdown in the attorney-client relationship and as such adequate representation is impossible and the client has discharged the attorney by saying he doesn't want the attorney to work on his case."

A hearing on the motion to withdraw was held during which the court received into evidence affidavits from trial counsel and Keri Wolf, an employee at the Scotts Bluff County Detention Center. Wolf's affidavit set forth that, as trial counsel was leaving the detention center on the afternoon of Friday, July 28, 2017, after having met with Valdez, Wolf overheard Valdez yell from his cell that he "did not want [trial counsel] working on his case anymore." Trial counsel's affidavit set forth that Valdez has accused counsel of "numerous contempt of court violations," that Valdez was refusing to meet with him, that counsel believed that the attorney-client relationship is irretrievably broken, and it was impossible for him to adequately prepare Valdez' defense as Valdez "has severed communication" with trial counsel. At the conclusion of the hearing, the court stated:

> Well, the law in Nebraska is that when you have an appointed attorney, you don't get an attorney of your choice. You have to be able to work with your attorney and I haven't heard anything concerning your attorney . . . [that] would indicate that he is either unwilling or unable to work with you. I've heard that you apparently are unwilling to talk to him. But, what it all gets down to is you don't get to pick your lawyer when somebody else is paying for the lawyer . . . . And, there is nothing wrong with the fact that you don't - that you can't afford an attorney. But, the law doesn't allow me to appoint different lawyers just because for some reason that does not amount to anything prejudicial that you may not trust your lawyer. I haven't heard anything from you or anybody else here today that should be a lack of trust. So I'm not going to grant the motion to withdraw . . . .

The jury trial was held over 2 days in August 2017. A stipulation by the parties was admitted into evidence. This stipulation set forth that Valdez had previously been convicted of a felony on both November 18, 2015, and November 2, 2016, and that both of those felony convictions legally prohibited Valdez from owning or possessing a deadly weapon. This stipulation was signed by the prosecutor, trial counsel, and Valdez. For its case in chief, the State adduced testimony from Scotts Bluff police officer Zach Rada, Taylor Sestak, and Samantha Marshall, also known as Samantha McLaughlin.

On April 16, 2016, at about 3:30 p.m. Scottsbluff police officer Zach Rada contacted Dillon at a hospital emergency room after being advised that she was an assault victim. Rada observed that Dillon's left eye was red and swollen, there was bruising above her left eye, and her right cheekbone was turning black and blue. Rada testified that he has investigated assaults and that

Dillon's injuries were consistent with someone who had been assaulted. Rada testified he identified Valdez as the suspect in Dillon's assault. Rada further testified that Sestak was at the hospital with Dillon but that it did not appear from his investigation that Sestak had been present at the assault. Rada testified that he made a report of the incident, which included Sestak's name, and this report was forwarded to the county attorney's office.

When the State asked Sestak its first question concerning Dillon, trial counsel objected based upon rules 404(1) and (2), relevance and substantial prejudice. The court overruled the objection but granted a continuing objection. Sestak testified that he gave Dillon a ride on April 26, 2016. Trial counsel again objected based upon 404(1) and (2), relevance, and substantial prejudice. The court again overruled the objection and granted a continuing objection. On that date, another individual was driving Dillon to the hospital when they stopped to pick up Sestak. Sestak observed that Dillon was "bruised up, . . . crying, [and] looked like she had been crying for hours." Sestak ended up driving Dillon to, and staying with her at, the hospital.

Sestak testified that, on January 11, 2017, he was with friends hanging out at Rachel Wassburger's apartment. He testified that around 8 p.m. he and McLaughlin were talking in an upstairs bedroom, when Valdez arrived and said "hey, bro, you are on my paperwork" and pulled a machete out of a cloth sheath that he had at his side. The machete had a 2½-foot blade with about 6 to 8 inches of serrated edge near the bottom of the blade. Sestak testified that, as Valdez pulled the machete out, he "was lunging towards me with it when he was telling me to sit down and I was telling him I didn't want to." Valdez then showed Sestak a witness list with Sestak's name listed. Valdez also told Sestak that he "needed to keep his nose out of other people's business" or that he "needed to just not butt into other people's business." Although Sestak attempted to explain that he was just trying to help a girl that was hurt and there were "no hard feelings towards anybody," Valdez did not accept that explanation as his attitude was "agitated and forceful" and he continued to lunge at Sestak and demanded that Sestak listen to him. Valdez then asked Sestak "if [he] had anything on [him]" to which Sestak replied that he had some methamphetamine. Valdez said he wanted it, but Sestak said that the drugs were not his and that he was trying to make money. Valdez then "asked" Sestak to weigh the drugs, which ended up weighing about one gram, which is worth about $100. Sestak testified that he gave half of the methamphetamine to Valdez "because he was threatening me and he was telling me this . . . will teach me a lesson getting my nose into other people's businesses [sic]." Sestak did not report the incident to police until after he was arrested and initially told officers that Valdez had taken $50 from him, not that he had taken methamphetamine, because he "wasn't sure how they would react to me saying meth."

Sestak stated that he was telling the truth but admitted that, in exchange for his testimony, the State had agreed to dismiss two felony cases against him. He further admitted that he has been convicted of a felony and that, in January 2017, he was using methamphetamine. He also stated that he had been off methamphetamine for about seven months and that, in the 42 days prior to the trial, he had been in a treatment facility.

McLaughlin corroborated Sestak's testimony about Valdez confronting Sestak about being on his paperwork but stated she did not actually see any paperwork. She further corroborated Sestak's testimony that Valdez had a machete which he was holding in front of him. McLaughlin stated that she did not initially report the incident to law enforcement because she was scared of Valdez and only reported the incident after she was arrested. She further admitted that she had

smoked methamphetamine the day before the incident and that she had been convicted of the crime of making a false statement in the past 10 years.

After these two witnesses' testimony, the State rested its case in chief. Valdez moved to dismiss the case on the basis that the witnesses' "stories don't match up" which motion was denied. The defense then called Wasserburger who testified that, on the afternoon at issue, she was not upstairs when Valdez initially entered the apartment and she never saw Valdez holding a machete. She did state there were two machetes in her home which were located by the front door. She described them as having black handles with 1½-foot blades. According to Wasserburger, that afternoon, she, Sestak, Crystal Jay, McLaughlin, and Valdez, all smoked methamphetamine together and that they "were all talking, [and] having a good time." She further testified that Sestak "seemed fine" when he left and did not seem scared, but she admitted that she had only known him for 1 day at that time. Further, Wasserburger admitted that she has been convicted of one felony and that she was currently in treatment for methamphetamine addiction. She further admitted that Valdez was one of her best friends and they looked out for each other, but she had not been promised anything for her testimony and stated she told the truth while testifying.

On rebuttal, the State called Gering police sergeant James Jackson. Jackson interviewed Wasserburger on January 23, 2017, regarding a robbery perpetrated by Valdez on Sestak. Jackson stated that, during the interview, Wasserburger stated that she was in the downstairs portion of the apartment and Jay, Sestak, and McLaughlin were upstairs. She further stated that Jay left the apartment briefly and returned with Valdez. Wasserburger never mentioned going upstairs in her apartment, never mentioned smoking methamphetamine with others, and did not tell him that everyone was "happy and talking." Further, when Jackson asked her about Valdez holding a machete, she responded "no." Jackson testified that, based upon his work as a police officer investigating drug crimes, a half gram of methamphetamine is worth about $50.

At the close of the evidence, Valdez again moved to dismiss the case on the basis that the State had not met its burden of proof beyond a reasonable doubt "based on the testimony we've seen from previous witnesses." The court overruled this motion and, following closing arguments and jury instructions, the case was submitted to the jury. Following deliberations, the jury found Valdez guilty of the charged offenses. Valdez filed a motion for new trial alleging three bases: jury misconduct; that the verdict was not sustained by sufficient evidence or was contrary to law; and error of law occurring at trial. Trial counsel also filed a second motion to withdraw in which he again alleged a breakdown in the attorney-client relationship and that, as such, "adequate representation is impossible."

In a September 2017 hearing, the court addressed both Valdez's motion for new trial and trial counsel's second motion to withdraw. The court denied trial counsel's second motion to withdraw stating "The Court has no evidence in front of it to indicate that [trial counsel]'s representation is any way incompetent or is in any way unfairly prejudicial to . . . Valdez."

Regarding the motion for new trial, counsel argued that the evidence was insufficient to support the jury verdict because the State did not produce the machete, there was conflicting testimony from the witnesses, and Wasserburger testified that there was no machete. Trial counsel also argued that error of law occurred at trial regarding the admission of bad act evidence involving Dillon. Finally, trial counsel argued there was juror misconduct for one juror's "fail[ure] to reveal a family connection to an incident that occurred with Mr. Valdez's family." Trial counsel claimed

to "have evidence that [the juror] was actually related to two individuals who threatened . . . or committed a crime of violence against Mr. Valdez's family. We know that there is a family connection there. We believe that it was misconduct, that this was not fully revealed, the family relation." Trial counsel argued that based on "the issues of crimes of violence and the fact that we have family members involved, we believe that Mr. Valdez was prejudiced . . . and we would request a new trial on these bases." Trial counsel offered exhibits 9 through 12 in support of his claim of juror misconduct, which exhibits were received into evidence. These exhibits included affidavits from Valdez' mother, Amelia Red Bear, and from a person identified as Montice Red Bear, who Amelia identified as her son. The affidavits provided that two male cousins of a juror were involved in an altercation with Amelia while she was stopped in her vehicle. The affidavits further set forth that one man pulled a gun on Amelia and threatened Montice and was later charged with, among other things, terroristic threats and use of a firearm to commit a felony. The affidavits also provided that the other man broke out the right rear window of Amelia's vehicle.

The district court denied the motion for new trial on all grounds. Regarding the juror misconduct claim, the court stated "I can't for the life of me figure out what the connection is, if any, with regard to the juror misconduct, somebody knows somebody who knows somebody who's related to somebody. And, there is nothing from a juror that indicates that there was a problem. So . . . there is no merit to that." On the claim that the verdict was not sustained by sufficient evidence or was contrary to law, the court stated:

> It's true no machete was produced in court, nor is it required. There was sufficient evidence from witnesses that indicated that there was a machete present and, as I recall, there was, also, testimony from another witness that there [were] machetes in the house before that, too. So there is more than sufficient evidence for the jury to find there was a weapon involved and that it was a machete.

Finally, regarding the claim that error of law occurred at trial involving the introduction of bad act evidence involving Dillon, the court stated:

> The evidence regarding Mr. Sestak's testimony and taking this other person to the hospital just - it just kind of couches the environment and the basis of the case. I don't recall that we went into that other assault case in any great detail, but it was a necessary part of the State's presenting their case. It does show motive with regard to Mr. Sestak. It shows how the case situation is connected to this prior event and why Mr. Valdez might have a motive to be threatening Mr. Sestak. So I don't - I don't see any problem with that admission and that was considered before trial as well.

On this same date, the court also sentenced Valdez. The district court stated that it considered the presentence investigation report (PSR) and noted that, as the trial judge, he had heard the trial evidence. The court noted that Valdez was 29 years old, had 12 years of education, and had not been recently employed because he had been in jail. The court also noted that Valdez had a juvenile record consisting of assault and trespassing and an adult record consisting of

> traffic, [drug] paraphernalia, marijuana offenses, several third degree assaults, disorderly conduct, attempted domestic assault, failure to appear, terroristic threats, driving under suspension, third degree domestic [assault], [and] possession of meth[amphetamine]. He

has certain other pending cases which . . . [are not] convictions . . . [but] they do show continued misconduct - or contact [with law enforcement], and I did find probable cause in the case earlier today that he had not complied with probation in 16-304. So those are things the Court can and does consider.

The court noted that Valdez'

[m]otive appeared to be some sort of revenge or retribution or something with regard to someone whose name had been in the police report that the defendant had [in his possession]. And, as I understand the victim's situation, he was helping somebody get to the hospital [who] had been assaulted and then Mr. Valdez happened to be the one who committed the assault, and apparently Mr. Valdez saw Mr. Sestak's name in some reports and then felt Mr. Sestak was in need of some sort of punishment.

The motivation for the offense, it's really difficult to tell. It's - it appears to fit into a pattern of violence that Mr. Valdez has developed his life into. The offense did involve violence. These offenses the Court does believe causes harm, they cause fear in people that, I think, probably lives on and they just contribute to the violent society which unfortunately we're in. There is no excuse or justification. The victim did nothing to induce the crime or in any way justify it.

The court acknowledged that Valdez' attitude was unknown because Valdez did not participate to much degree in the PSR; however, the court noted that in a prior PSR conducted in December 2016, Valdez scored high on the level of service/case management inventory (LS/CMI), scored in the problem area in drugs on the substance abuse questionnaire (SAQ), and scored the minimum on the Simple Screening Instrument (SSI). The court further noted that Valdez appeared to have developed a criminal lifestyle, appeared to be comfortable in that lifestyle, and it appeared to be how he intended to conduct his life at this point in time of not complying with the law and the circumstances appeared likely to recur.

The court found that substantial and compelling reasons existed to deny probation. The court noted that probation was not likely to succeed and was not appropriate because of Valdez' prior record of violence, the degree of violence involved in the current case, and the trouble Valdez was currently having with probation.

Finally, the court found that a lesser sentence than imprisonment would depreciate the seriousness of the offenses or promote disrespect for the law, that Valdez was in need of treatment that could best be provided in a correctional setting, the risk was substantial that during any period of probation Valdez would engage in additional criminal conduct, and he could not be effectively and safely supervised in a community setting with community resources. On the robbery conviction, the district court sentenced Valdez to 5 to 10 years' imprisonment with credit for 245 days served. On the use of a deadly weapon (other than a firearm) to commit a felony and possession of a deadly weapon (other than a firearm) by a prohibited person, the court sentenced Valdez to 2 to 4 years' imprisonment for each count, with the sentences ordered to be served concurrently with each other and consecutively to the sentence for robbery. Valdez has timely appealed to this court and is represented by different counsel than represented him at trial and sentencing.

## III. ASSIGNMENTS OF ERROR

Valdez assigns the following errors: (1) the district court erred in denying his motion for a new trial, (2) the district court erred in not allowing defense counsel to withdraw from the case, (3) the evidence was insufficient to support his convictions, (4) his trial counsel was ineffective, and (5) the sentences imposed were excessive.

## IV. STANDARD OF REVIEW

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017); *State v. Hoerle*, 297 Neb. 840, 901 N.W.2d 327 (2017).

An appellate court reviews for abuse of discretion a trial court's evidentiary rulings on the admissibility of a defendant's other crimes or bad acts under rule 404(2), or under the inextricably intertwined exception to the rule. *State v. Castellanos*, 26 Neb. App. 310, 918 N.W.2d 345 (2018).

An appellate court reviews the trial court's decision on a motion to withdraw as counsel for an abuse of discretion. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

When a defendant's trial counsel is different from his or her appellate counsel, all issues of ineffective assistance of trial counsel that are known to the defendant or are apparent from the record must be raised on direct appeal. *State v. McGuire*, 299 Neb. 762, 910 N.W.2d 144 (2018). If the issues are not raised, they are procedurally barred. *Id*.

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. *State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018). The determining factor is whether the record is sufficient to adequately review the question. *Id*. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing. *State v. Nolt*, 298 Neb. 910, 906 N.W.2d 309 (2018).

An appellate court determines as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *State v. Hood*, 301 Neb. 207, 917 N.W.2d 880 (2018).

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Russell*, 299 Neb. 483, 908 N.W.2d 669 (2018). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *Id*.

## V. ANALYSIS

### 1. DENIAL OF MOTION FOR NEW TRIAL

First, Valdez claims that the district court erred in overruling his motion for new trial based on juror misconduct and the admission of evidence of Valdez' prior assault of Dillon.

### (a) Juror Misconduct

Valdez contends that the district court erred in denying his motion for a new trial on the basis that a juror failed to reveal a family connection between the juror's family and Valdez' family. Brief for appellant at 17.

A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Hairston, supra*. When an allegation of jury misconduct is made and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred. *Id*. If jury misconduct occurred, the trial court must then determine whether such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *Id*. If the trial court determines that the jury misconduct did not occur or that that it was not prejudicial, adequate findings are to be made so that the determination may be reviewed. *Id*.

Valdez contends that a juror engaged in misconduct by failing to disclose that she was related to 2 individuals who threatened, or committed, a crime of violence against Valdez' mother, Amelia. Regarding the juror misconduct claim, the court stated: "I can't for the life of me figure out what the connection is, if any, with regard to the juror misconduct, somebody knows somebody who knows somebody who's related to somebody. And, there is nothing from a juror that indicates that there was a problem. So . . . there is no merit to that."

Following an allegation of misconduct by a juror, a trial court conducts a hearing only when the allegation is supported by a showing which "tends to prove that serious misconduct occurred." *State v. Hairston*, 298 Neb. at 257, 904 N.W.2d at 5. Here, the affidavits offered by Valdez demonstrate only that Valdez' mother, whose last name is Red Bear, was involved in an altercation with persons who were allegedly the cousins of a juror. There is nothing in Valdez' allegations which establishes the degree of relationship between the juror and alleged perpetrators other than they are cousins, whether the juror knew of the relationship between Valdez and Red Bear, whether the juror knew of the incident, or whether there would be bias if any of these matters were connected.

Based upon the speculative nature of the allegations, the trial court deemed that there was insufficient evidence to establish that serious misconduct occurred, did not grant a further hearing, and overruled Valdez' motion for a new trial on that issue. We agree. The affidavits offered by Valdez are remote and speculative and do not rise to the level of supporting a showing which tends to prove serious misconduct occurred. There is no evidence or suggestion that the juror even knew of the relationship between Valdez and Red Bear or of the incident allegedly involving the juror's cousins. Further, "[j]urors are presumed to follow their oath." *Pena-Rodriguez v. Colorado*, ___ U.S. ___, 137 S. Ct. 855, 868, 197 L. Ed. 2d 107 (2017). See, also, *Penry v. Johnson*, 532 U.S.

782, 799, 121 S. Ct. 1910, 150 L. Ed. 2d 9 (2001) ("[w]e generally presume that jurors follow their instructions"); *Sundahl v. State*, 154 Neb. 550, 48 N.W.2d 689 (1951); *Tracy v. State*, 46 Neb. 361, 64 N.W. 1069 (1895). Thus, the district court did not abuse its discretion in overruling Valdez' motion for new trial on the basis of juror misconduct.

### (b) Admission of Evidence of Prior Assault

Valdez also contends that the district court erred in denying his motion for a new trial based on the erroneous admission of evidence of a prior bad act regarding Dillon. He contends that allowing the prior bad act evidence had the tendency to inflame the jury and would "improperly influence their decision" and was not admissible under rule 404. Brief for appellant at 17.

Neb. Rev. Stat. § 27-404(2) (Reissue 2016) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Although § 27-404(2) does render evidence of other crimes or acts inadmissible to show a propensity to commit such acts, it specifically excepts from that rule the admissibility of that evidence for other purposes such as proof of motive.

In *State v. Torres*, 283 Neb. 142, 812 N.W.2d 213 (2012), the Nebraska Supreme Court analyzed whether evidence of a previous kidnapping and robbery were admissible in connection with a subsequent charge of robbery and murder involving another individual. In finding that the evidence was admissible under § 27-404(2) on the basis of motive, the court held:

The evidence surrounding the kidnapping and robbery [in the prior crime] was . . . independently relevant because it proved Torres' rather desperate desire for money and transportation to Texas. And when [the victims] were killed [in the current crime], the perpetrator apparently took [one of the victim]'s money and then drove [the victim]'s car to Texas. The logical relevance of the rule 404(2) evidence does not depend on an inference that Torres acted in conformity with a general propensity to commit crimes--rather, it depends on the inference that the person who killed [the victims] wanted money and transportation to Texas, and the rule 404(2) evidence proved Torres' pressing desire to obtain those specific things. Although the evidence also reflects poorly on Torres' character, its logical relevance is independent of that.

*Torres*, 283 Neb. at 160, 812 N.W.2d at 233-34.

Likewise, the evidence of Valdez' alleged assault against Dillon was independently relevant of the current crime of robbery in that Valdez' stated reason for threatening Sestak and taking his methamphetamine was in retaliation for Sestak being listed as a witness on "paperwork" related to the prior assault. This matter represents a clear case of evidence of a prior act being offered for a purpose independent of his character, that is, the evidence was offered to show Valdez' motive for this crime. The district court did not abuse its discretion in denying Valdez' motion for a new trial on the basis that the evidence of the prior assault was erroneously admitted.

## 2. DENIAL OF COUNSEL'S MOTION TO WITHDRAW

Valdez next contends that the district court erred in not allowing trial counsel to withdraw from the case. Valdez claims that he did not trust his trial counsel because "someone had given his [d]iscovery to other inmates and his [d]iscovery was floating around the jail." Brief for appellant at 18. We note that, although trial counsel filed two motions to withdraw, Valdez' appeal only references the first motion to withdraw and its denial.

An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel. *State v. Wabashaw*, 274 Neb. 394, 740 N.W.2d 583 (2007). Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).

At the hearing on trial counsel's motion to withdraw, Valdez admitted that he brought the issue of his discovery materials to his trial counsel's attention and trial counsel stated that he did not know how anyone in the jail would have received it. The record from the hearing also discloses that Valdez was unwilling to work with his trial counsel.

Although Valdez's allegations indicate a dissatisfaction with his appointed trial counsel, mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. See *State v. Wabashaw, supra*. Further, there is no indication that trial counsel was incompetent or unwilling to work with Valdez. Thus, we conclude that the district court did not abuse its discretion in denying trial counsel's motion to withdraw.

## 3. INSUFFICIENCY OF EVIDENCE

Valdez next argues that the evidence was insufficient to support his convictions. His argument consists of summarizing the testimony of the trial witnesses and stating:

> This case involves a bunch of meth users, people with felonies and lying to the police and conviction for false statements. All of these lay witnesses who testified were not credible witnesses. There is a great deal of contradictions in the testimony of the lay witnesses. The evidence presented by the State was simply insufficient to justify a verdict of guilty by the Jury.

Brief for appellant at 27.

Valdez asks this court to reweigh the evidence, resolve conflicts in the evidence, and pass on the credibility of witnesses. This is not the province of an appellate court. The jury has performed those functions and found sufficient evidence, beyond a reasonable doubt, to convict Valdez of the charged offenses. Upon our review of the evidence, which we review in the light most favorable to the State, there is sufficient evidence to support the jury's determination.

## 4. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Valdez contends that his trial counsel was ineffective in (a) "asking [the probation officer] not to do certain LSC/CMI Domains Testing, or the SSI or SAQ test" during the presentence investigation; (b) failing to object and request a mistrial when Sestak "mentioned what he had said

about Mr. Valdez doing something" to Dillon; (c) in "fail[ing] to effectively cross-examine all of the State's witnesses"; (d) in stipulating that Valdez had previously been convicted of a felony on 2 occasions and that those convictions legally prohibited him from owning or possessing a deadly weapon; and (e) failing to request a record of voir dire, opening statements, or closing arguments. Brief for appellant at 14-15.

(a) Allegations Regarding Presentence Investigation

Valdez contends that his trial counsel was ineffective in "asking [the probation officer] not to do certain LSC/CMI Domains Testing, or the SSI or SAQ test" during the presentence investigation (PSI). Brief for appellant at 14. He claims that "perhaps if those tests had been done, it would have caused a more favorable light" on him. *Id*.

In the case of an argument presented for the purpose of avoiding procedural bar to a future postconviction action, appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014). In so deciding, the court held, "[w]ithout such specific allegations, the postconviction court would effectively be asked to '"'conduct a discovery hearing to determine if anywhere in this wide world there is some evidence favorable to defendant's position.'"'" *Id*. at 133, 853 N.W.2d at 867.

We note that Valdez' argument is that, had his trial counsel recommended that the probation officer conduct certain evaluations during Valdez' PSI, those tests "perhaps" would have caused the district court to view him in a more favorable light. Valdez does not allege what these tests would have shown if they had been conducted or how the results of the tests would have benefitted him. The claim presented represents a speculative, conclusory allegation that, if the testing were performed, it might somehow have assisted him with his sentence. This is, in essence, a request to perform discovery to determine whether there might be evidence favorable to his position which tactic our Supreme Court specifically rejected in *Abdullah*. Thus, Valdez has not sufficiently alleged deficient performance regarding counsel's alleged ineffectiveness in recommending that certain evaluations not be conducted as part of Valdez' PSI.

(b) Failure to Object/Request Mistrial

Second, Valdez contends that his trial counsel was ineffective in failing to object and request a mistrial when Sestak "mentioned what he had said about . . . Valdez doing something to [Dillon]." Brief for appellant at 14.

The record affirmatively refutes this argument because trial counsel was granted a continuing objection to Sestak's testimony regarding Dillon. Further, trial counsel moved for a new trial, in part, based upon allegations that the testimony about the Dillon incident was impermissible prior bad acts evidence and was unfairly prejudicial. The district court overruled the motion for a new trial holding that the Dillon evidence was admissible for an independent reason. As we previously discussed, the evidence governing Dillon's assault was properly admitted for the independent reason of showing Valdez' motive to commit the crime of robbery. "As a matter of law, counsel cannot be ineffective for failing to raise a meritless argument." *State v.*

*Collins*, 299 Neb. 160, 167, 907 N.W.2d 721, 728 (2018). Where the record refutes a claim of ineffective assistance of counsel, no recovery may be had. See *State v. Liner*, 24 Neb. App. 311, 886 N.W.2d 311 (2016). Since the record affirmatively refutes Valdez' claim that his trial counsel was ineffective for failing to object and request a mistrial when Sestak testified regarding Valdez "doing something" to Dillon, his claim must fail.

### (c) Lack of Cross-Examination

Third, Valdez contends that his trial counsel was ineffective in failing to effectively cross-examine "all of the State's witnesses." Brief or appellant at 14.

On direct appeal, an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). As previously discussed, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *Id.* In *State v. Abdullah, supra*, the Supreme Court held that, in stating a claim that counsel was deficient for failing to call two witnesses, it was necessary to specifically "allege what the testimony of these witnesses would have been if they had been called in order to avoid dismissal without an evidentiary hearing." 289 Neb. at 133, 853 N.W.2d at 867.

Valdez' general allegation that trial counsel failed to effectively cross-examine "all" of the State's witnesses does not allege specific conduct. It in no way states the subject of the testimony he calls into question or the substance of the proposed cross-examination. Thus, we find that Valdez has not sufficiently pled this claim and, consequently, this claim is not preserved for postconviction review.

### (d) Stipulation

Valdez next contends that his trial counsel was ineffective in stipulating that Valdez had previously been convicted of two felonies and the convictions legally prohibited him from owning or possessing a deadly weapon (other than a firearm).

"Counsel in a criminal case may waive his client's fourteenth amendment right of confrontation by stipulating to the admission of evidence if the attorney's decision is a legitimate trial tactic and the defendant does not dissent from the decision. *United States v. Stephens*, 609 F.2d 230 (5th Cir. 1980)." *State v. Bromwich*, 213 Neb. 827, 830, 331 N.W.2d 537, 540 (1983).

There is no evidence that Valdez dissented from his trial counsel's decision to enter into the stipulation. Further, consent may be inferred by a defendant's actions. *State v. Cotton*, 299 Neb. 650, 910 N.W.2d 102 (2018), *disapproved on other grounds, State v. Avina-Murillo*, 301 Neb. 185, 917 N.W.2d 865 (2018) (examination of whether trial counsel was ineffective for failing to request mistrial when witness appeared at trial after being declared unavailable and having portion of his deposition read into record where Cotton personally consented to proceeding with witness' live testimony). Our review of the evidence shows that Valdez signed the stipulation indicating his consent to enter into the stipulation. Additionally, a defendant cannot elect a particular trial strategy and then complain if it proves unsuccessful. *State v. Evans*, 218 Neb. 849, 359 N.W.2d 790 (1984) (ineffective assistance of counsel claim failed where defendant and trial counsel waived right to file motion to suppress, and defendant stated specifically that he agreed

with his counsel's judgment). Since Valdez consented to the entry of the stipulation, he cannot now complain that his trial counsel was ineffective for entering into that same stipulation.

### (e) Failure to Request Record

Finally, Valdez contends that his trial counsel was ineffective for failing to request a record of voir dire, opening statements, or closing arguments.

The recordation of the voir dire exam and opening and closing statements is not made mandatory by the rules, and the failure to require recordation cannot be said, ipso facto, to constitute inadequacy of counsel. *State v. Jones*, 246 Neb. 673, 522 N.W.2d 414 (1994). See, also, Neb. Ct. R. § 2-105(A)(2) (rev. 2010); *State v. Alarcon-Chavez*, 295 Neb. 1014, 893 N.W.2d 706 (2017). An appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel when raising an ineffective assistance claim on direct appeal. *State v. Hill, supra*. Because Valdez does not make specific allegations as to why counsel's failure to request the recording of voir dire and opening and closing statements constituted deficient performance by trial counsel, his claim has not been sufficiently pled and, consequently, this claim is not preserved for postconviction review.

### 5. EXCESSIVE SENTENCES

Valdez claims that, even though the sentences imposed were within the applicable statutory limits, they are excessive. Valdez was convicted of two Class II felonies: robbery and use of a deadly weapon (other than a firearm) to commit a felony. See Neb. Rev. Stat. §§ 28-324 (Reissue 2016) (robbery) and 28-1205 (Reissue 2016) (use of a deadly weapon). He was sentenced to 5 to 10 years' imprisonment on the robbery conviction and 2 to 4 years' conviction on the use of a deadly weapon conviction. Both of these sentences are within the statutory sentencing range for Class II felonies which are punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 2016). Valdez was also convicted of possession of a deadly weapon (other than a firearm) by a prohibited person, a Class III felony. See Neb. Rev. Stat. § 28-1206 (Reissue 2016) (possession of a deadly weapon by a prohibited person). His sentence of 2 to 4 years' imprisonment is within the statutory sentencing range for Class III felonies which are punishable by 0 to 4 years' imprisonment. See § 28-105.

Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, an appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Collins*, 292 Neb. 602, 873 N.W.2d 657 (2016). In imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the amount of violence involved in the commission of the crime. *Id.*

Here, the record reflects that the district court considered the PSR, Valdez's age, education, criminal history, failure to comply with probation, and his recent unemployment due to his incarceration. The court further noted that Valdez appeared to have developed a criminal lifestyle, appeared to be comfortable in that lifestyle, he appeared to intend to conduct his life not complying with the law, and the circumstances appeared likely to recur. The court noted that Valdez' motive

appeared to be revenge or retribution due to Sestak's name appearing as a witness in some police reports due to Sestak previously giving Dillon a ride to the hospital following her assault by Valdez. The court also noted that the offenses involved violence, "appear[ed] to fit into a pattern of violence that Mr. Valdez has developed his life into," and there was no excuse or justification for the offenses. Finally, the court found that a lesser sentence than imprisonment would depreciate the seriousness of the offenses or promote disrespect for the law, that Valdez was in need of treatment that could best be provided in a correctional setting, and the risk was substantial that during any period of probation Valdez would engage in additional criminal conduct and he could not be effectively and safely supervised in a community setting with community resources.

Based upon the facts that the sentences imposed were within the relevant statutory sentencing ranges, Valdez' criminal history, the seriousness and violence involved with the offenses, and the district court's consideration of all the relevant factors in imposing Valdez' sentences, we cannot say that the district court abused its discretion when it sentenced Valdez within the statutory limits. Valdez' claim that the sentences imposed are excessive is without merit.

## VI. CONCLUSION

Having considered Valdez' assigned errors and finding them to be without merit or insufficiently pled, we affirm his convictions and sentences.

AFFIRMED.