STATE OF NEBRASKA, APPELLEE, V. ELROY L. WABASHAW,
ALSO KNOWN AS ELROY L. WABASHA, ALSO KNOWN AS
JOHNNY LEE BEARSHIELD, APPELLANT.
740 N.W.2d 583

Filed October 26, 2007. No. S-06-642.

Jerry L. Soucie, of Nebraska Commission on Public Advocacy, and, on brief, Mark A. Johnson, of Johnson, Morland, Easland & Lohrberg, P.C., for appellant.

Jon Bruning, Attorney General, James D. Smith, and, on brief, Susan J. Gustafson for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Elroy L. Wabashaw appeals his convictions for robbery and use of a firearm to commit a felony. Before his jury trial, Wabashaw moved to quash the information. He argues that article I of the "1868 Treaty between the United States of America and different Tribes of Sioux Indians" (1868 Treaty) and article VI of the U.S. Constitution barred his prosecution. The district court overruled the motion. A jury found Wabashaw guilty on both charges, and the district court sentenced Wabashaw as a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995).

Although Wabashaw raises several issues on appeal, the main issue is whether the district court had jurisdiction over the robbery that occurred in Indian country. We conclude that the district court had jurisdiction over the offense and that the relevant provision of the 1868 Treaty did not divest the district court of jurisdiction. We affirm.

## I. BACKGROUND

Monica Kitto testified that she was working at a gas station on April 8, 2005, when a person dressed in black and wearing a white scarf around his face came into the gas station. The robber pointed a gun at Kitto and gave her a note directing her to put money in a bag, and she did as instructed. Kitto estimated that the total amount taken was a little more than $500. The robber then took the women's restroom key, threw it at Kitto, and told her to go to the restroom. Kitto stayed inside the restroom 2 to 3 minutes before she came out and called the police.

Kitto testified that she could not see the robber's face or hands because they were covered. Although she could not recognize the robber's voice, she described him as slim, 5 feet 8 inches to 5 feet 10 inches tall.

Acting on a tip, Santee Police Chief Michael G. Vance met with Wabashaw at the police station. As Vance began questioning Wabashaw, Officer Robert Henry was present, but Henry left on a police call and did not witness the entire interview. Vance read Wabashaw his *Miranda* rights and told Wabashaw that Vance wanted to talk about the robbery. Wabashaw signed a waiver of his *Miranda* rights and initially stated he had nothing to do with the robbery. Vance then told him that police had recovered some clothing articles left at a sweat lodge. Vance also told him a DNA analysis on the clothing would match Wabashaw. Upon hearing this, Wabashaw told Vance that he "'did it'" and that he had acted alone. When Vance asked Wabashaw about the gun used in the robbery, he stated he left the rifle in a field when he was running from a police officer. After making this admission to Vance, Wabashaw wrote and signed a statement stating he committed the robbery. Because Henry was present at part of the interview, Vance signed Henry's name and his own at the bottom of Wabashaw's written statement.

Later, the State charged Wabashaw with robbery and use of a weapon to commit a felony. Wabashaw moved to quash the information. He alleged that the prosecution was unconstitutional, as prohibited by the 1868 Treaty and article VI of the U.S. Constitution. The court overruled the motion to quash.

Before trial, the State submitted handwriting samples to a laboratory for analysis. Claiming the written confession was a forgery, Wabashaw moved to have a handwriting expert appointed. The court granted his motion. The record does not show whether Wabashaw's trial counsel ever obtained the expert. Wabashaw argues on appeal that he was denied effective assistance of counsel because counsel failed to obtain a handwriting expert.

At trial, the State called four witnesses, including Vance and a handwriting expert. The handwriting expert compared more than 26 known writings and concluded that Wabashaw was the

individual who wrote the written confession. Wabashaw's counsel cross-examined each of the State's witnesses except Vance, reserving examination of Vance for Wabashaw's case in chief.

A jury found Wabashaw guilty of robbery and use of a firearm to commit a felony. At the enhancement hearing, the court received certified records for a 1977 South Dakota conviction. The court admitted records of the 1977 conviction and another prior conviction. The court found Wabashaw to be a habitual criminal. It sentenced him to consecutive prison terms of 12 to 14 years for the robbery conviction and 10 to 12 years on the weapons conviction.

## II. ASSIGNMENTS OF ERROR

Wabashaw assigns, rephrased and reordered, that the district court erred by (1) overruling Wabashaw's motion to quash, (2) not conducting an evidentiary hearing on Wabashaw's motions to allow counsel to withdraw and to appoint substitute counsel, (3) determining that the State sufficiently proved identity to use a prior conviction to enhance Wabashaw's sentence, and (4) accepting a prior conviction from South Dakota for enhancement when South Dakota law precludes the use of the conviction for enhancement purposes.

Wabashaw also assigns that he was denied effective assistance of counsel. He claims his attorney (1) had a conflict of interest when he had previously represented Henry, who was called as a witness; (2) failed to request an evidentiary hearing on Wabashaw's motion to quash; (3) failed to object to references to evidence recovered by the police; (4) failed to file a motion to suppress Wabashaw's confession as fruit of the poisonous tree; (5) failed to cross-examine Vance during the State's case in chief; and (6) failed to obtain a handwriting expert.

## III. STANDARD OF REVIEW

Regarding questions of law presented by a motion to quash, we resolve the questions independently of the lower court's conclusions.[1]

---

[1] See *State v. Gozzola*, 273 Neb. 309, 729 N.W.2d 87 (2007).

## IV. ANALYSIS

### 1. THE DISTRICT COURT HAD JURISDICTION
### OVER WABASHAW'S PROSECUTION

Wabashaw argues that the district court did not acquire jurisdiction over him because his arrest, detainment, and prosecution violated article I of the 1868 Treaty and article VI of the U.S. Constitution. After Wabashaw's counsel had briefed to this court, we appointed Wabashaw new counsel. During oral argument, Wabashaw's new counsel argued that the record is insufficient for us to decide the jurisdictional issue. Counsel suggested that to address the issue, we would need to know whether Wabashaw is an Indian, and that evidence is not in the record. We have determined, however, that the court had jurisdiction regardless of whether Wabashaw is an Indian or a non-Indian.

### (a) Background Concerning Public Law 280

■ By enacting Public Law 280 in 1953, Congress granted Nebraska jurisdiction over criminal offenses committed by or against Indians in Indian country. Public Law 280 is now codified at 18 U.S.C. § 1162(a) (2000), which provides that Nebraska

shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country . . . to the same extent that [Nebraska] has jurisdiction over offenses committed elsewhere within [Nebraska], and the criminal laws of [Nebraska] shall have the same force and effect within such Indian country as they have elsewhere within [Nebraska].

The record shows that the gas station is in Knox County, Nebraska, within the Santee Sioux Nation—Indian country—which brings the robbery within the purview of Public Law 280.

■ In 1968, Congress provided for the voluntary abandonment of the jurisdiction granted by Public Law 280.[2] In 2001, the Nebraska Legislature offered retrocession of criminal and

---

[2] See 25 U.S.C. § 1323 (2000).

civil jurisdiction over the Santee Sioux Reservation.[3] We note that the Legislature's resolution called for an effective date of July 1, 2001, but retrocession is not effective until the federal government accepts it.[4] The federal government did not immediately accept the Legislature's 2001 offer of retrocession; it was not effective until February 15, 2006.[5] The retrocession, therefore, was not yet effective when the robbery occurred in April 2005 or when the State charged Wabashaw in the district court that same month.

■ In a case involving retrocession of jurisdiction over a different reservation, we considered the effect of retrocession on pending cases and crimes committed before acceptance.[6] We decided that Nebraska did not abandon jurisdiction over crimes committed before the federal government's acceptance of retrocession.[7] So, any jurisdiction the State had over the robbery under Public Law 280 in 2005 was not lost when the retrocession became effective in 2006.

(b) District Court Had Jurisdiction Regardless of
the Indian Status of Wabashaw or His Victim

Wabashaw's counsel stated during oral argument that we did not have a sufficient record to determine jurisdiction because the record failed to state whether Wabashaw is an Indian. We determine that regardless of whether Wabashaw is an Indian, the court had jurisdiction.

Public Law 280 gives Nebraska jurisdiction "over offenses committed *by or against Indians* in the areas of Indian country."[8] The robbery occurred in Indian country. Therefore, if

---

[3] L.R. 17, Legislative Journal, 97th Leg., 1st Sess. 2356, 2358-59 (May 31, 2001).

[4] See *State v. Goham*, 187 Neb. 34, 187 N.W.2d 305 (1971). See, also, Executive Order No. 11435, 33 Fed. Reg. 17,339 (Nov. 21, 1968).

[5] See Notice of Acceptance of Retrocession of Jurisdiction for the Santee Sioux Nation, NE, 71 Fed. Reg. 7994 (Feb. 15, 2006).

[6] See *State v. Goham*, 191 Neb. 639, 216 N.W.2d 869 (1974).

[7] *Id.*

[8] See 18 U.S.C. § 1162(a) (2000) (emphasis supplied).

either Wabashaw or his victim is an Indian, Nebraska has jurisdiction.

■ The only other possibility is that neither Wabashaw nor his victim is an Indian. Yet even in that scenario, Nebraska has jurisdiction because when a non-Indian commits a crime against another non-Indian in Indian country, jurisdiction rests in the state.[9]

Under all possible permutations, the court had jurisdiction. So, we can resolve the jurisdictional issue despite the record's lack of information regarding Wabashaw's Indian status.

### (c) The 1868 Treaty Did Not Divest the District Court of Jurisdiction

Having determined that jurisdiction does not depend on Wabashaw's Indian status, we now analyze the 1868 Treaty. We assume that Wabashaw is an Indian because the 1868 Treaty provision on which he relies is irrelevant if he is not an Indian.

Wabashaw argues that the court lacked jurisdiction over him because his arrest, detainment, and prosecution violated article I of the 1868 Treaty and article VI of the U.S. Constitution. Thus, he concludes that the court erred in overruling his motion to quash.

Wabashaw relies on article I of the 1868 Treaty, which states:

> If bad men among the Indians shall commit a wrong or depredation upon the person or property of any one, white, black, or Indian, subject to the authority of the United States, and at peace therewith, the Indians herein named solemnly agree that they will, upon proof made to their agent and notice by him, deliver up the wrong-doer to the United States, to be tried and punished according to its laws . . . .[10]

Wabashaw argues that no notice was given to a designated Santee tribal agent to deliver him over to U.S. authorities.

---

[9] See *United States v. McBratney*, 104 U.S. 621, 26 L. Ed. 869 (1881).

[10] Treaty between the United States of America and different Tribes of Sioux Indians, April 29, 1868, 15 Stat. 635.

Therefore, he argues the court was without jurisdiction until he was brought properly before it under the method described in the 1868 Treaty.

We do not believe the plain language of the 1868 Treaty imposes the notice requirement that Wabashaw suggests. Yet, even if we construe the language to impose such a notice requirement, we determine that Congress has abrogated the requirement.

■■■ Congress may abrogate Indian treaty rights, but it must clearly express its intent to do so.[11] By enacting Public Law 280, Congress clearly intended to subject Indians to Nebraska's jurisdiction and criminal laws and to abrogate any inconsistent treaty provisions. The purported notice requirement in the 1868 Treaty imposes an obligation that does not exist under Nebraska criminal law and, as such, is inconsistent with Nebraska law. Additionally, if we concluded that the State lacks jurisdiction because the arresting authority did not comply with the notice requirement, it would be inconsistent with Congress' clear intent to subject Indians to Nebraska's jurisdiction.

We conclude that even if we construe the 1868 Treaty language to impose a notice requirement, Congress abrogated the provision by enacting Public Law 280.

In passing, we note that the U.S. Court of Appeals for the Eighth Circuit recently rejected an argument similar to Wabashaw's claim.[12] Although the Eighth Circuit did not rely on Public Law 280, the court determined that Congress had abrogated any notice provision in the 1868 Treaty when it enacted a separate statute to give Indians citizenship.

We conclude that Wabashaw's first assignment of error is without merit because the 1868 Treaty did not divest the court of jurisdiction. The court did not err in overruling Wabashaw's motion to quash.

---

[11] *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 119 S. Ct. 1187, 143 L. Ed. 2d 270 (1999).

[12] See *U.S. v. Drapeau*, 414 F.3d 869 (8th Cir. 2005), *cert. denied* 546 U.S. 1119, 126 S. Ct. 1090, 163 L. Ed. 2d. 906 (2006).

## 2. THE DISTRICT COURT DID NOT ERR IN FAILING TO CONDUCT AN EVIDENTIARY HEARING

Wabashaw contends that the court erred when it did not hold an evidentiary hearing on his motion to allow trial counsel to withdraw and to appoint substitute counsel. Wabashaw made two motions to allow his trial counsel to withdraw: the first was for an alleged conflict of interest, and the second was for Wabashaw's assertion that counsel was not giving Wabashaw all the materials he requested. The court denied both motions. Wabashaw now argues that the court had a duty to conduct an evidentiary hearing to determine whether a basis existed for substituting counsel.

Wabashaw's argument is without merit. First, assuming the court erred in failing to conduct an evidentiary hearing on the alleged conflict of interest, it was not prejudicial. As shown later in our discussion, the alleged conflict of interest did not result in ineffective assistance. So, any error by the court in failing to conduct an evidentiary hearing on the first motion did not prejudice Wabashaw's defense.

■ Next, the court did not err in failing to hold an evidentiary hearing on Wabashaw's second motion to appoint substitute counsel. An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel.[13] Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel.[14] At the hearing on Wabashaw's second motion, he stated that trial counsel had not given him materials to prepare "live questions" for the witnesses. For this reason—and other similar dissatisfactions with trial counsel's conduct—Wabashaw sought to have the court discharge counsel and appoint substitute counsel. Wabashaw did not have the right to choose counsel, and his dissatisfaction with trial counsel was insufficient to secure substitute counsel. Because Wabashaw's asserted grounds for discharging counsel and appointing new counsel were insufficient, there was no reason for the court to conduct an evidentiary hearing.

---

[13] See *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000).

[14] *Id.*

### 3. THE STATE PROVIDED SUFFICIENT PROOF OF IDENTITY TO USE A SOUTH DAKOTA CONVICTION FOR ENHANCEMENT

Wabashaw contends that the district court erred during the enhancement stage. He argues that the State failed to prove that an "Elroy Wabasha" who was convicted for robbery in 1977 in South Dakota was the same person as the defendant in this case, "Elroy Wabashaw." The State contends that the evidence at the enhancement hearings established the two defendants were the same.

Wabashaw argues that during the enhancement hearing, the court received testimony comparing two photographs, both alleged to be of Wabashaw. He argues that the court erred in overruling his hearsay and authentication objection and that the ruling was prejudicial. However, we need not determine whether the court erred in overruling Wabashaw's objection. Assuming the court committed an error, it did not prejudice Wabashaw because the record contained sufficient evidence to prove his identity.

 A prior conviction and the identity of the accused as the person convicted may be shown by any competent evidence.[15] This includes the oral testimony of the accused and authenticated records maintained by the courts or penal and custodial authorities.[16] We have stated that fingerprint identity testified to by an expert is perhaps the best known method of the highest probative value in establishing identification.[17]

Fingerprints of "Elroy Wabasha" were taken in 1981 when he was serving his 15-year sentence for the 1977 robbery conviction. Knox County authorities also took fingerprints from Wabashaw when he was in jail in April 2005. At the enhancement hearing, the parties stipulated that if called to testify, a fingerprint examiner would conclude that the same individual contributed the fingerprints in both the 1981 set and the 2005 set. As we have stated, this fingerprint evidence is perhaps the best known method of establishing identity.

---

[15] See *State v. Luna*, 211 Neb. 630, 319 N.W.2d 737 (1982).

[16] *Id.*

[17] *Id.*

We have also stated that an authenticated record establishing a prior conviction of a defendant with the same name is prima facie evidence sufficient to establish identity for enhancing punishment. And absent any denial or contradictory evidence, it is sufficient to support a finding of a prior conviction.[18]

The court received a certified copy of the conviction from the 1977 robbery case. The defendant's name appears as "Elroy Wabasha" in the authenticated record, though the defendant's name in the present case is "Elroy Wabashaw."

Under the idem sonans doctrine, a mistake in the spelling of a name is immaterial if both modes of spelling have the same sound and appearance.[19] Here, the spelling discrepancy is immaterial. Thus, the certified copy of the conviction in the 1977 robbery case was an "authenticated record establishing a prior conviction of a defendant *with the same name.*" Therefore, the record is prima facie evidence sufficient to establish identity for enhancing punishment.[20] Furthermore, Wabashaw has not offered any evidence or claimed that he is not the same person referred to in the prior conviction record.

We conclude that the court did not err in determining the State sufficiently proved Wabashaw was the same person as the "Elroy Wabasha" who was convicted in the 1977 South Dakota robbery case.

### 4. NEBRASKA COULD USE WABASHAW'S 1977 CONVICTION FOR ENHANCEMENT ALTHOUGH SOUTH DAKOTA WOULD NO LONGER PERMIT USE OF THE CONVICTION FOR ENHANCEMENT

Wabashaw contends that the district court erred in accepting his 1977 South Dakota robbery conviction to enhance his sentence. He argues South Dakota law precludes use of the conviction for enhancement purposes. Wabashaw relies on S.D. Codified Laws § 22-7-9 (2004), which states in part: "A prior conviction may not be considered under [South Dakota's

---

[18] *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004).

[19] *State v. King*, 272 Neb. 638, 724 N.W.2d 80 (2006); *State v. Laymon*, 217 Neb. 464, 348 N.W.2d 902 (1984).

[20] See *State v. Thomas, supra* note 18.

enhancement statutes] unless the defendant was, on such prior conviction, discharged from prison, jail, probation, or parole within fifteen years of the date of the commission of the principal offense." Wabashaw argues that the South Dakota law operates as an "'expungement'" or "'pardon'" of any prior felony convictions, for enhancement purposes, 15 years after discharge.[21] Wabashaw argues that "[t]o deny South Dakota's treatment of his prior offense as 'expunged' would be denying the Full Faith and Credit of South Dakota's laws and their treatment of judgments of convictions."[22]

(a) The Plain Language of Nebraska's Habitual Criminal Statute Does Not Preclude Use of the 1977 Conviction

 Nebraska's habitual criminal statute does not preclude the use of Wabashaw's 1977 conviction. Nebraska's habitual criminal statute, § 29-2221, states:

(1) Whoever has been twice convicted of a crime, sentenced, and committed to prison, in this or any other state or by the United States or once in this state and once at least in any other state or by the United States, for terms of not less than one year each shall, upon conviction of a felony committed in this state, be deemed to be an habitual criminal . . . .

The statute's plain language does not impose a time limit for using a prior conviction. Nor does it provide that an out-of-state conviction may be used only if it could be used for enhancement in that other state. The statute simply requires that the defendant was twice previously (1) convicted, (2) sentenced, and (3) committed to prison for a term not less than 1 year.

Section 29-2221 does contain one, but only one, exception to the use of a prior conviction. That exception, found in subdivision (3), provides that if the state grants a person a pardon because he is innocent, the state cannot use the conviction for enhancement. Wabashaw claims that the South Dakota statute operated as a "pardon" of his 1977 conviction and that Nebraska cannot use the conviction for enhancement. But this so-called

---

[21] Brief for appellant at 36.

[22] *Id.*

"pardon" was not granted because he was innocent and therefore does not fit the exception under the Nebraska statute.

Nothing in the language of the Nebraska habitual criminal statute suggests the court erred in using Wabashaw's 1977 South Dakota conviction for enhancement purposes.

### (b) The Full Faith and Credit Clause Does Not Require Nebraska to Recognize South Dakota's Treatment of the 1977 Conviction

Wabashaw argues that Nebraska must give full faith and credit to South Dakota's treatment of his conviction. We are not convinced that the Full Faith and Credit Clause of the U.S. Constitution requires Nebraska to recognize South Dakota's treatment of the 1977 conviction as "expunged" for enhancement purposes.

The New Mexico Court of Appeals faced a similar, although not identical, issue in *State v. Edmondson*.[23] In *Edmondson*, a New Mexico trial court enhanced the defendant's sentence, using a Texas conviction that had been set aside by a Texas court. The defendant argued on appeal that the Full Faith and Credit Clause prohibited use of the Texas conviction because Texas law did not permit such convictions for habitual offender sentencing. The New Mexico Court of Appeals decided that the Texas conviction could be used to enhance the defendant's sentence in New Mexico, even though it could not be used under the Texas habitual offender statute.

The court refused to apply the Full Faith and Credit Clause. It stated the clause would "rarely, if ever, compel one state to be governed by the law of a second state regarding the punishment that can be imposed for a crime committed within the first state's boundaries."[24] The court relied on *Hughes v. Fetter*.[25] In *Fetter*, the U.S. Supreme Court stated, "[F]ull faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state;

---

[23] *State v. Edmondson*, 112 N.M. 654, 818 P.2d 855 (N.M. App. 1991).

[24] *Id.* at 659, 818 P.2d at 860.

[25] *Hughes v. Fetter*, 341 U.S. 609, 71 S. Ct. 980, 95 L. Ed. 1212 (1951).

rather, it is for this Court to choose in each case between the competing public policies involved."[26]

The *Edmondson* court reasoned that a state's penal code is the strongest expression of the state's public policy. It stated that "[f]ull faith and credit ordinarily should not require a state to abandon such fundamental policy in favor of the public policy of another jurisdiction."[27] The court ultimately decided that the policies behind the Texas rule precluding the use of the conviction were not so compelling that full faith and credit required the rule to prevail over New Mexico law.

We find the *Edmondson* court's analysis persuasive. We conclude that the Full Faith and Credit Clause does not prevent a Nebraska court from using Wabashaw's 1977 robbery conviction. The court did not err in using Wabashaw's conviction to enhance his sentence.

### 5. WABASHAW'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

Wabashaw claims he received ineffective assistance of counsel in several respects. We need not dismiss an ineffective assistance of counsel claim merely because a defendant raises it on direct appeal.[28] The determining factor is whether the record is sufficient to adequately review the question.[29] But if the defendant has not raised ineffective assistance of counsel at the trial level and it requires an evidentiary hearing, we will not address the matter on direct appeal.[30]

To establish a right to relief because of ineffective counsel at trial or on direct appeal, the defendant has the burden first to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area.[31] Next, the defendant must show that counsel's deficient performance

---

[26] *Id.*, 341 U.S. at 611.

[27] *State v. Edmondson, supra* note 23, 112 N.M. at 659-60, 818 P.2d at 860-61.

[28] *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003).

[29] *Id.*

[30] See *id.*

[31] *Id.*

prejudiced the defense in his or her case.[32] To prove prejudice, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[33] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[34] When a defendant challenges a conviction, the question is whether there is a reasonable probability that absent the errors, the fact finder would have had a reasonable doubt concerning guilt.[35]

### (a) Wabashaw Was Not Denied Effective Assistance of Counsel Because of an Alleged Conflict of Interest

Wabashaw contends that he was denied effective assistance of counsel because of an alleged conflict of interest. Before trial, Wabashaw asked his trial counsel to file a motion to withdraw and for appointment of successor counsel. Counsel had previously represented Henry in an unrelated matter, and Wabashaw believed counsel would not fully and effectively examine Henry at trial because of that relationship. The court overruled the motion. Wabashaw now argues that this alleged conflict of interest denied him effective assistance of counsel. We believe the record is sufficient to adequately review this issue on direct appeal.

The right to effective assistance of counsel generally requires that the defendant's attorney be free from any conflict of interest.[36] The phrase "conflict of interest" denotes a situation in which a lawyer might disregard one duty for another or when a lawyer's representation of one client is rendered less effective because of his or her representation of another client.[37] A conflict of interest must be actual, rather than speculative or

---

[32] Id.

[33] Id.

[34] See id.

[35] Id.

[36] U.S. Const. amend. VI; Neb. Const. art. I, § 11; State v. Dunster, 262 Neb. 329, 631 N.W.2d 879 (2001); State v. Narcisse, 260 Neb. 55, 615 N.W.2d 110 (2000).

[37] See, State v. Dunster, supra note 36; State v. Narcisse, supra note 36.

hypothetical, before a court can overturn a conviction because of ineffective assistance of counsel.[38]

Wabashaw relies in part on *State v. Ehlers*.[39] In *Ehlers*, the concern was defense counsel's attorney-client relationship with a state witness. The State argued that the relationship gave rise to continuing obligations of loyalty and confidentiality that could prevent counsel from conducting a thorough cross-examination. We noted that the goal is to discover whether a defense lawyer has divided loyalties that prevent him or her from effectively representing the defendant. We stated that disqualification is appropriate when the conflict could cause the defense attorney to improperly use privileged communications in cross-examination. We also noted that disqualification is appropriate if the conflict could deter the defense attorney from intense probing on cross-examination.

At the hearing on the motion to withdraw, the State said it could not guarantee that it would not call Henry as a witness because "officers come and go from Santee" and that if Vance "moved on," it would be necessary to call Henry. Vance, however, ultimately testified for the State, and the State did not call Henry as a witness. Instead, Henry testified for the defense. Therefore, trial counsel was never in the position of cross-examining Henry, and the concern in *Ehlers* regarding counsel's inability to conduct a thorough cross-examination was not present.

Wabashaw further argues the written confession was a forgery. Therefore, he asserts that Vance and Henry's credibility was crucial. He claims that trial counsel should have established the statement's unreliability. He argues that although counsel asked Henry if he witnessed the statement, counsel failed to ask why Henry did not strike his name from the statement. Nor did counsel ask why he allowed the statement to go forward without alerting the court that his signature had been "forged."

Wabashaw has failed to show how counsel's failure to further question Henry prejudiced his defense. It is unclear how any

---

[38] *Id.*

[39] *State v. Ehlers*, 262 Neb. 247, 631 N.W.2d 471 (2001).

further probing of Henry could have swayed the jury. Henry's direct testimony established that he did not sign his own name to the statement. Further questioning regarding Henry's character or his conduct would not affect the statement's veracity because it was Vance, not Henry, who questioned Wabashaw and took Wabashaw's written statement.

Wabashaw has failed to show that counsel's alleged conflict of interest prejudiced his defense. Thus, we determine that he was not denied effective assistance of counsel because of an alleged conflict of interest.

### (b) Counsel's Failure to Request an Evidentiary Hearing on the Motion to Quash Was Not Ineffective Assistance

Wabashaw also argues that trial counsel was ineffective in failing to request an evidentiary hearing on Wabashaw's motion to quash. Wabashaw contends that counsel failed to preserve relevant evidence, thereby materially affecting his ability to challenge the court's denial of his motion to quash. Specifically, Wabashaw alleges that counsel failed to produce evidence showing Wabashaw is an American Indian or that he is a member of the Sioux tribe protected by the 1868 Treaty.

Counsel's failure to preserve the evidence did not prejudice Wabashaw. We have concluded that the 1868 Treaty did not provide a basis for granting the motion to quash. So, Wabashaw suffered no prejudice when counsel failed to produce evidence showing he was a member protected by the treaty. Counsel's failure to request an evidentiary hearing on the motion was not ineffective assistance of counsel.

### (c) The Record on Direct Appeal Is Insufficient to Review the Remaining Ineffective Assistance Claims

Wabashaw further argues that counsel was ineffective by failing to (1) object to references to evidence recovered by the police, (2) file a motion to suppress Wabashaw's confession as fruit of the poisonous tree, (3) cross-examine Vance during the State's case in chief, and (4) obtain a forensic handwriting expert.

We conclude that the record on direct appeal is not sufficient to adequately review these claims of ineffective assistance.

## V. CONCLUSION

We conclude that the district court had jurisdiction. The court did not err in (1) failing to conduct an evidentiary hearing on Wabashaw's second motion to allow counsel to withdraw, (2) determining that the State had made sufficient proof of identity to use the 1977 conviction to enhance Wabashaw's sentence, or (3) accepting the 1977 conviction for enhancement when South Dakota law precludes its use.

Assuming the court erred in failing to conduct an evidentiary hearing on Wabashaw's first motion to allow counsel to withdraw, it was not prejudicial.

Neither trial counsel's alleged conflict of interest nor his failure to request an evidentiary hearing on the motion to is insufficient to review Wabashaw's remaining ineffective assistance claims on direct appeal.

We affirm Wabashaw's convictions and sentences.

AFFIRMED.

HEAVICAN, C.J., not participating in the decision.