IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. O'NEAL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

EVERETTE L. O'NEAL, APPELLANT.

Filed June 13, 2023.    No. A-22-632.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Joy Shiffermiller, of Shiffermiller Law Office, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Everette L. O'Neal appeals from his convictions of first-degree sexual assault and felony child abuse. O'Neal claims that the district court erred in failing to have an evidentiary hearing on his request to discharge trial counsel; the district court erred in relation to the victim's testimony by allowing the victim to change his testimony to meet the exigencies of litigation and refusing to allow trial counsel to properly impeach the victim with his previous statements and deposition testimony; and that the evidence was insufficient to support his convictions. For the reasons stated herein, we affirm.

## II. STATEMENT OF FACTS

### 1. CHARGES

After a 14-year-old victim came forward alleging that O'Neal had sexually assaulted him, O'Neal was charged in Lancaster County District Court with first degree sexual assault of a child,

a Class IB felony, and child abuse, a Class IIIA felony. The State later amended the information to add a habitual criminal enhancement allegation to the child abuse charge.

## 2. REQUEST TO DISCHARGE COUNSEL

During a March 2022 pretrial conference, the parties informed the district court that O'Neal had rejected a plea offer by the State. In response to questioning by the district court, O'Neal indicated that he had not had sufficient time to discuss the plea offer with his counsel. In response, the court took a 45-minute recess to give O'Neal additional time to discuss the plea offer with counsel. Following the recess, counsel advised the court that O'Neal did not wish to accept the State's plea offer. The district court advised O'Neal of his rights and asked if he had discussed those rights with his counsel to which O'Neal responded that "I don't understand none of them" and "I don't really trust my attorney at this point."

Following these statements, the district court excused the State to discuss O'Neal's statements indicating distrust for his counsel. During the discussion, O'Neal stated:

> I'm just trying . . . not to cry because it's not worth it. But I think I'm just more angry. I'm just tired. . . . I don't feel my lawyer -- you keep pushing me to do something I don't want to do. You just keep throwing stuff at me. It just eats me up.
>
> I know I done some wrong, but I didn't do what no one said I did.
>
> . . . .
>
> I just feel I'm being set up. I don't feel right about it.

As the conversation continued, the following colloquy ensued between O'Neal and the Court:

> [O'Neal:] I don't trust my attorney.
> THE COURT: And why is that?
> [O'Neal:] The things he tells me.
> THE COURT: I'm sorry?
> [O'Neal:] The things he tells me.
> THE COURT: All right. We don't have the county attorney in the room. What is it that he has told you that you don't trust?
> [O'Neal:] He's telling me what you could do, but he's not telling me nothing definite. It's all about he might do this, he might do that.
> THE COURT: For sure.
> [O'Neal:] But it's just hard.
> THE COURT: Well, those are different things.
> [O'Neal:] It's just hard to cop to something I didn't do.
> THE COURT: Because if you took a plea, I would ask you that question, has anybody made any promise to you as to what your sentence would be. Nobody can do that.
> [O'Neal:] I know. I just seen too many lies he tells me. I have two attorneys and they both told me lies. And I'm, like, I mean, why do you want to take the case if you want to lie to me? I don't know how to file these papers and stuff like that.
> THE COURT: I understand. That's why we're having this discussion.
> [O'Neal:] I wish I did.

THE COURT: . . . I haven't seen any of the evidence. I haven't looked at the paperwork, right?

[O'Neal:] I just feel everybody against me. I even thought you, but that's just – I don't know, man.

THE COURT: Well --

[O'Neal:] I don't know. I watch a lot of Law and Order, stuff like that. And I just --

THE COURT: That's a terrible place to learn the law.

Following the colloquy, the district court stated that it had not heard "anything that suggests that [trial counsel] isn't providing you a competent defense."

### 3. SECOND REQUEST TO DISCHARGE COUNSEL

Immediately prior to the commencement of trial, the State advised the court that O'Neal had rejected another plea offer. At that time, the court again questioned O'Neal about whether he had sufficient time to discuss the plea offer with his counsel. O'Neal replied, "I just don't understand the charges." After explaining the charges and asking O'Neal whether he needed additional time to consult with his counsel, O'Neal stated "Yeah. If I could talk - - say what I want to say to you?" At that point, the State informed the court that his understanding from jail calls was that O'Neal might like to speak to the court "concerning his relationship with [trial counsel] and their ability to work together. . . . I just want to make sure we have a clean record of that before proceeding and potentially something coming up later on down the road." After the prosecution left the courtroom, the court again provided O'Neal an opportunity to discuss his concerns related to counsel's representation. The following colloquy occurred:

[O'Neal:] I just feel [counsel] is not trying to help me in any kind of way, just by reading the evidence that I [saw] in the discovery and the deposition. I just . . . feel he's overlooking what I'm saying and just reading what they say.

THE COURT: Have you given [counsel] all of the defenses that you think you have in this case?

[O'Neal:] I thought I did. I'm pretty sure I did.

THE COURT: Okay.

[O'Neal:] Because I'm not guilty.

THE COURT: All right.

[O'Neal:] I just don't understand how . . . a charge on a sexual assault [can be brought] with no evidence; and, then, child abuse. Okay, I bought some marijuana.

[Defense Counsel:] Don't make any admissions.

[O'Neal:] But, still, I plead to that. If I'm wrong to [do] that, yes, I understand that. But child abuse, how did -- I just don't understand that charge. I really don't. I –

THE COURT: What you –

[O'Neal:] I don't know how there might be a charge.

THE COURT: What you're saying to me is you don't understand how the State has enough evidence to convict you of that charge, right?

[O'Neal:] Yes.

THE COURT: I don't know that.

[O'Neal:] I understand, sir.

THE COURT: What I do know is the State believes it has the evidence to do that. They believe -- and, again, . . . I haven't seen the evidence. But the State has brought these charges. The State is ready for trial – meaning to me, that they think they can prove this.

After the discussion concluded, the district court recessed to allow O'Neal to have a private conversation with counsel. When the matter resumed, counsel indicated:

In speaking with my client, he tells me he still doesn't want to accept the State's offer, assuming that it's available.

And he would like me to tell the court he would like to discharge me as his counsel. And he would like to address the court if the court will allow it.

After the prosecutors again left the courtroom, the following discussion occurred between O'Neal and the court:

THE COURT: You said you were interested in discharging counsel? Are –

[O'Neal:] Yes.

THE COURT: And the reasons for that?

 . . . .

[O'Neal:] He avoid[s] everything I say to him.

THE COURT: I'm sorry, he what?

[O'Neal:] Avoid. It's, like, every time I ask him a question, he don't answer it.

THE COURT: Give me an example.

[O'Neal:] I just asked him about the charges . . . And every time I talk about the charges, he keep[s] saying I'm trying to get you out of prison the earliest I can. But I'm still going to prison at the age of 60 and doing ten years. And if I go in ten years, I could die in ten years. But if I go in 20 years, I'll never get out because I'll still be an old man. He's not -- it's hard to explain. I just see that he don't have my back. He's not trying. I mean, I can understand maybe he don't like what happened in the case. I don't know. But every time I ask him something, he avoids my question.

THE COURT: And do you have a concern that [counsel] can't provide a robust defense for you in this case?

[O'Neal:] Yeah.

THE COURT: Why?

[O'Neal:] Just because he don't have my back.

THE COURT: I'm sorry, you'll have to speak up.

[O'Neal:] I just don't feel that he's in my corner.

THE COURT: Anything else you'd like to say?

[O'Neal:] I can't think of anything. My head is so clogged up right now.

Following the discussion, the district court refused to discharge counsel stating:

There are certain standards that I have to find in order to discharge counsel, especially on the . . . morning of trial . . . I don't find those.

There's not been such a breakdown of communication in the legally recognized way that I could . . . even come close to granting the motion.

We hear from defendants frequently . . . that the defense attorney is not in [the defendant's] corner. In lots of cases, attorneys work with what's in front of them, what's presented to them. They can't make evidence. They can't change the evidence. All they can do is provide as good a defense as possible.

And I don't hear anything that suggests to me that [counsel] hasn't done all that's necessary to provide for your defense. Whether you believe he's in your corner or not in your corner, really, doesn't meet the burden that I need to find in that regard. So, we'll proceed to trial. The motion for discharge is denied.

### 4. JURY TRIAL

The jury trial then proceeded in June 2022 with the State calling witnesses including the victim; the victim's mother; Deep Amin, general manager of a motel; and Jessica Wenzl, a Nebraska State Patrol Investigator.

During the trial, the evidence established that O'Neal was born in August 1958, making him 25 years of age or older at the time of the offenses. The victim was born in August 2005, making him at least 12 years of age but less than 16 years of age at the time of the offenses.

### (a) O'Neal's First Contact With Victim

In early to mid-2020, the victim was longboarding with a friend near a Lincoln Walmart when O'Neal honked his car horn and signaled him over to the car. After a brief conversation, O'Neal offered the victim a small amount of marijuana which the victim accepted. The victim exchanged phone numbers with O'Neal because he believed that he could "buy weed from him" in the future. After this first meeting, O'Neal and the victim exchanged text messages, phone calls, and met in person between 8 to 10 times during a 3-month period. During their meetings, O'Neal provided transportation, bought food for the victim, and supplied the victim with alcohol on 2 or 3 occasions. During the meetings, O'Neal and the victim discussed making money and, one time, the victim helped make arrangements for O'Neal to purchase acid.

### (b) Omaha Incident

The victim testified that 3 or 4 months after meeting, O'Neal took the victim to an Omaha restaurant. During this trip, O'Neal provided the victim with over seven alcohol shooters. After leaving the restaurant, O'Neal then drove the victim to a residential area where O'Neal told the victim that he was "really pretty," lifted up the victim's shirt, and felt the victim's chest area. Eventually, O'Neal pulled down the victim's pants and touched the victim's penis with one hand while taking pictures with his phone with the other hand. After approximately 15 minutes, the victim informed O'Neal that he needed to return home. At some point following this occasion, the victim was "grounded" from his phone and did not have contact with O'Neal for approximately one month.

### (c) Suicide Attempt and Victim's Initial Interview

The victim testified that, on October 23, 2020, he was hospitalized following a suicide attempt. During his hospitalization, the victim's mother located text messages on the victim's

phone between O'Neal and the victim which had occurred between September and October 2020. After the discovery of the text messages, a Child Advocacy Center (CAC) representative interviewed the victim regarding the nature of the victim's relationship with O'Neal. The victim testified that he did not initially disclose any information regarding the sexual assaults because he was scared of O'Neal, because O'Neal knew where the victim lived and what school he attended, and because he did not want anyone to know what had happed.

### (d) Lincoln Incident - Walmart Bathroom

Despite this fear, sometime after the victim's release from the hospital in October 2020, the victim again met up with O'Neal at a fast-food restaurant located inside the Lincoln Walmart where they first met. During that meeting, O'Neal followed the victim into the bathroom and bathroom stall, took pictures of the victim with the victim's pants down, touched the victim's penis, and made the victim stroke O'Neal's penis until O'Neal ejaculated.

### (e) Second Lincoln Incident - Motel

After the first incident, the victim met O'Neal one more time in early 2021. On that date, the victim snuck out of his house and walked to a motel to meet O'Neal to discuss making some money. Upon arriving at the motel, the victim asked the front attendant for directions to O'Neal's room which was located on the second or third floor. After entering O'Neal's motel room, the victim and O'Neal laid in separate beds and watched TV. At some point, the victim joined O'Neal on his bed, laid under the covers, and watched TV. O'Neal then cuddled the victim, kissed the victim's neck, and took off the victim's clothes. The victim testified that O'Neal made him "play with himself" while O'Neal removed his own clothes, after which O'Neal touched the victim's penis with his hand and made the victim touch O'Neal's penis with the victim's hand and his mouth until O'Neal ejaculated. O'Neal then made the victim masturbate until the victim ejaculated. Thereafter, O'Neal gave the victim $50.

During the course of the investigation, the victim drew a diagram of O'Neal's motel room which was consistent with Room 307 at the motel. The motel manager confirmed that O'Neal stayed at the motel in room 307 for several days in February 2021.

### (f) Victim's Disclosure of Assaults

In March 2021, the victim was at school when he received a phone call from O'Neal. The victim became frightened, ran away, and was picked up by law enforcement. He was then interviewed a second time by CAC during which he disclosed the sexual assaults because he did not want O'Neal to sexually assault someone else. Nebraska State Patrol Investigator Wenzl was present during this second interview. At the conclusion of the victim's interview, Wenzl used the victim's phone to communicate with O'Neal. Thereafter, Wenzl suggested a controlled call between the victim and O'Neal which took place on April 15, 2021. During the call, the victim attempted to discuss the hotel incident, but O'Neal indicated that he did not want to discuss some of those things over the phone. Wenzl observed that, during the call, the victim became "very tense, almost to the point where he looked like he was going to cry or possibly throw up. He did need to leave the room and go to the bathroom. He slumped. At times [the victim] seemed just angry." During the controlled call, O'Neal agreed to meet the victim outside of a particular

fast-food restaurant. Investigator Wenzl arrived at the designated location at approximately 11:45 p.m. and observed a red pickup, registered to O'Neal, in the parking lot. Wenzl photographed the pickup but did not see O'Neal inside the pickup although she did receive a phone call from him on the victim's phone. Wenzl eventually observed the pickup leave the parking lot. Later that evening, O'Neal was taken into custody on another matter.

While O'Neal was in custody, Investigator Wenzl interviewed him regarding her ongoing investigation. During the interview, O'Neal was evasive, had to be redirected by Wenzl on multiple occasions, and mischaracterized the substance of the controlled call with the victim by stating he had been waiting for a female in the parking lot of the fast-food restaurant. Wenzl later obtained O'Neal's cell phone, completed a data extraction, and confirmed that text messages had been exchanged between O'Neal's phone and the victim's phone. Additionally, she confirmed the date and time of her text conversations with O'Neal using the victim's phone, as well as the controlled call.

### 5. VERDICT AND SENTENCING

After the conclusion of the evidence, the jury convicted O'Neal of the charged offenses. Thereafter, the district court determined that O'Neal was a habitual criminal which the court then applied to the child abuse conviction. The court sentenced O'Neal to 30 to 40 years' imprisonment for the first degree sexual assault conviction and 20 to 25 years' imprisonment for the child abuse conviction. The sentences were ordered to run consecutively. O'Neal has timely appealed to this court and is represented by different counsel than represented him at trial and sentencing.

## III. ASSIGNMENTS OF ERROR

O'Neal assigns as error, consolidated and restated, that: (1) the district court erred in failing to have an evidentiary hearing on his request to discharge trial counsel; (2) the district court erred in relation to the victim's testimony by allowing the victim to change his testimony to meet the exigencies of litigation and refusing to allow trial counsel to properly impeach the victim with his previous statements and deposition testimony; and (3) the evidence was insufficient to support his convictions.

## IV. STANDARD OF REVIEW

An appellate court reviews a trial court's rulings motions to dismiss appointed counsel and appoint substitute counsel for an abuse of discretion. *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021).

Regardless of whether the evidence is direct, circumstantial, or a combination thereof, and regardless of whether the issue is labeled as a failure to direct a verdict, insufficiency of the evidence, or failure to prove a prima facie case, the standard is the same: In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Cerros*, 312 Neb. 230, 978 N.W.2d 162 (2022).

The credibility and weight of witness testimony are for the jury to determine, and witness credibility is not to be reassessed on appellate review. *State v. Davis*, 310 Neb. 865, 969 N.W.2d 861 (2022).

## V. ANALYSIS

### 1. EVIDENTIARY HEARING ON REQUEST TO DISCHARGE COUNSEL

O'Neal first contends that the district court erred in failing to hold an evidentiary hearing on his request to discharge his counsel.

A similar argument was made by the defendant in *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019). In *Weathers*, the defendant claimed that "the district court abused its discretion when it overruled his motion to dismiss his counsel and appoint substitute counsel." *Id.*, 304 Neb. at 428, 935 N.W.2d at 205. The Nebraska Supreme Court stated:

> When a defendant becomes dissatisfied with court-appointed counsel, unless he or she can show good cause to the court for the removal of counsel, his or her only alternative is to proceed pro se if he or she is competent to do so. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). An indigent defendant's right to have counsel does not give the defendant the right to choose his or her own counsel. *State v. Wabashaw*, 274 Neb. 394, 740 N.W.2d 583 (2007). Mere distrust of, or dissatisfaction with, appointed counsel is not enough to secure the appointment of substitute counsel. *Id.* Appointed counsel must remain with an indigent accused unless one of the following conditions is met: (1) The accused knowingly, voluntarily, and intelligently waives the right to counsel and chooses to proceed pro se; (2) appointed counsel is incompetent, in which case new counsel is to be appointed; or (3) the accused chooses to retain private counsel. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013).
>
> In this case, the court gave [the defendant] the option to proceed pro se, and he rejected that option. [The defendant] did not choose to retain private counsel and instead sought appointment of substitute counsel. Therefore, under *State v. McGuire, supra*, in order to remove his counsel and obtain new appointed counsel, [the defendant] was required to establish not merely that he distrusted or was dissatisfied with his counsel but that trial counsel was incompetent.
>
> As a general matter, [the defendant] argues that the district court erred because it did not hold an evidentiary hearing on his motion to dismiss his counsel. We have said that once a defendant requesting substitute counsel has raised a seemingly substantial complaint about counsel, the court has a duty to thoroughly inquire into the complaint. *State v. Davlin*, 265 Neb. 386, 658 N.W.2d 1 (2003). However, . . . when a defendant's asserted grounds for discharging counsel and appointing new counsel were insufficient, there was no reason for the court to conduct an evidentiary hearing. See *State v. Wabashaw, supra*. In this case, [the defendant's] motion fully set forth his reasons for removing his counsel, and when the court took up the motion, it asked [the defendant] whether he had any reasons other than those set forth in his motion why counsel should be dismissed and [the defendant] replied that there were none. The court therefore had enough information from which to determine whether [the defendant's] assertions had merit, and . . . the court in its discretion determined that Weathers' asserted reasons did not require removal of counsel and appointment of

substitute counsel. Therefore, the court's failure to hold an evidentiary hearing was not in itself error.

*State v. Weathers*, 304 Neb. at 429-30, 935 N.W.2d at 205-06.

Here, the record reflects that the district court provided O'Neal with three separate opportunities to provide good cause for the removal of trial counsel. However, during each opportunity, O'Neal generally stated that he did not trust his counsel, counsel did not have his back, counsel was not providing him with definite answers, counsel avoided answering his questions, and counsel was not trying to provide him with a robust defense. After each opportunity, the district court found that O'Neal failed to provide good cause for the removal of his trial counsel. Based on our review of the record, O'Neal did not assert sufficient grounds during the proceedings to show that counsel was incompetent or that there was reason to appoint new counsel. As in *Weathers, supra*, the district court had enough information before it to determine whether the allegations against trial counsel had merit. Accordingly, the district court was not required to hold an evidentiary hearing on the basis of O'Neal's general dislike of trial counsel.

We further note that O'Neal argues in his brief, but did not assign as error, that his trial counsel was ineffective for failing to discuss his case other than to suggest that O'Neal should plead to the offenses or make a counteroffer to the State's plea offer; failing to file a motion for new trial on the basis that O'Neal was deprived of a fair trial due to the victim changing his testimony to meet the exigencies of trial; failing to ask for a mistrial or a new trial due to trial counsel's inability to properly cross-examine the victim; and failing to move for dismissal of the charges due to insufficiency of the evidence to support O'Neal's convictions because of the State's failure "to prove the corpus delicti." In so far as O'Neal's claims relate to allegations of ineffective assistance of counsel, we will not consider those here as O'Neal failed to specifically assign these claims as error. See *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

## 2. VICTIM'S TESTIMONY

O'Neal next assigns that the district court committed error regarding the victim's testimony. First, he contends that the court erred "in allowing [the victim] to change his testimony to meet the exigencies of the litigation" and cites to *Momsen v. Nebraska Methodist Hospital*, 210 Neb. 45, 53, 313 N.W.2d 208, 213 (1981) for the proposition of law that "[w]here a party without reasonable explanation testifies to facts materially different concerning a vital issue, the change clearly being made to meet the exigencies of pending litigation, such evidence is discredited as a matter of law and should be disregarded." Second, he argues that the trial court erred in not allowing counsel to properly impeach the victim. We will address these arguments independently.

### (a) Changing Testimony to Meet Exigencies of Litigation

First, we note that O'Neal's counsel failed to preserve O'Neal's claim that the court erred in allowing the victim's inconsistent testimony in that his counsel never timely objected or moved to strike this testimony once it was adduced. Regardless, O'Neal's proposition of law is misplaced.

In *State v. Dalland*, 287 Neb. 231, 238, 842 N.W.2d 92, 98 (2014), the Nebraska Supreme Court stated:

> The inconsistent testimony of a witness who is a party to the action is treated differently from a nonparty witness. "Where it is clear that a party as a witness, to meet the exigencies in pending litigation and without reasonable explanation, changes such witness' testimony and then testifies to facts materially different concerning a vital issue, the subsequent and altered testimony from such witness is discredited as a matter of law and should be disregarded. . . . Otherwise, an inconsistent or contradictory statement by a witness, who is not a party opponent, is a factor which may affect a jury's evaluation of a witness' credibility or weight to be given such witness' testimony." [*State v.*] *Robertson*, 223 Neb. [825,] 828-29, 394 N.W.2d [635,] 637 (citations omitted). In other words, testimony altered for trial to meet the exigencies of the pending litigation should be disregarded as a matter of law only if the witness giving the testimony is a party to the action. Contradictory testimony given by a nonparty witness is considered and weighed by the trier of fact and may be taken into account by the trier of fact when determining credibility. See [*State v. Osborn*, 241 Neb. 424, 490 N.W.2d 160 (1992)].

*State v. Dalland*, 287 Neb. 231, 238-39, 842 N.W.2d 92, 98 (2014). The Nebraska Supreme Court went on to hold that "[a] witness of the State is not a party subject to this rule." *State v. Dalland*, 287 Neb. at 238, 842 N.W.2d at 98. Because the victim's testimony is not subject to the rule cited by O'Neal, we reject his contention that the district court erred by allowing the victim's testimony to stand.

(b) Failure to Allow Impeachment of Victim

Second, O'Neal contends that the district court erred in failing to allow trial counsel to properly impeach the victim with the victim's prior statements made during his deposition. At trial, defense counsel attempted to utilize the victim's prior deposition testimony and statements made during the CAC interviews to impeach the victim so as to demonstrate he was testifying inconsistently at trial. Specifically, O'Neal argues that within the victim's deposition testimony the victim stated that O'Neal did not go into the bathroom stall with him at Subway, but during trial, the victim stated that O'Neal did come into the stall and that O'Neal performed sexual acts on the victim. During the trial, although trial counsel initially failed in his first attempt to cross-examine the victim using the victim's deposition because of objections made to the form of his question, trial counsel subsequently elicited the following testimony regarding the identified subject matter:

> Q. Now, yesterday you testified that . . . O'Neal and you went into the stall together?
> A. I did.
> Q. And do you remember being asked that question at the deposition whether . . . O'Neal ever went into the stall with you?
> A. Yes.
> Q. And do you remember what your answer was?
> A. My answer was, he might have; but I don't remember.
> Q. So, are you saying you don't remember what your answer was?

A. No. I was saying that's what I said. . . . sorry. Would you reask the question?

Q. Sure. Do you remember being asked at the deposition whether . . . O'Neal ever went into the stall with you?

A. Yes, I remember being asked that.

Q. And what was your answer?

A. I'm pretty much sure my answer was maybe.

Q. Well, by pretty sure, . . . you don't remember what your answer was?

A. Not exactly.

Q. Would taking a look at that deposition refresh your recollection?

A. It would.

[Defense Counsel:] May I approach, Your Honor.

THE COURT: You may.

[Defense counsel:] Thank you.

By [Defense counsel:]

Q. Is your memory refreshed . . .?

A. It is.

Q. So, when you gave that deposition, you testified there that . . . O'Neal never went into the stall with you, didn't you?

A. I did.

Q. And yesterday you testified that you and . . . O'Neal touched each other in that bathroom stall?

A. Yes, I did.

Q. But you were asked that same question at your deposition, right?

A. I don't remember if I was told that exact question.

Q. Would taking a look at this deposition refresh your recollection on that issue . . .?

A. It would.

[Defense counsel:] May I approach again, Your Honor?

THE COURT: You may.

[Defense counsel:] Thank you.

By [Defense counsel:]

Q. Let me know when your memory is sufficiently refreshed . . .

A. My memory is refreshed.

Q. Now, in that deposition I asked you, did . . . you or . . . O'Neal ever touch each other or yourselves in that bathroom?

A. Yes.

Q. And your answer was, that you don't assume you would while he was waiting because you were pretty sure somebody would have noticed that, right?

A. Yes.

Q. And then I asked you, did . . . O'Neal ever touch you when you were in that bathroom stall? Do you remember that?

A. Yes.

Q. And do you remember what your answer was?

A. My answer was no.

Q. And then I asked you whether . . . O'Neal ever had you touch him in that bathroom stall. And do you remember what your answer was . . . to that question?

A. No.

Q. Would [you take a] look at this?

A. My answer was no, not that I don't remember.

Q. Okay. So, in the deposition you testified that in the bathroom stall . . . O'Neal never touched you?

A. Yes.

Based on the record, defense counsel successfully brought the conflicting testimony to the attention of the jury. Accordingly, we find that the record refutes O'Neal's claim that the district court erred by not allowing trial counsel to "properly impeach" the victim with his deposition testimony. Accordingly, this assignment of error fails.

### 3. Sufficiency of Evidence

O'Neal next contends that the district court erred in finding that the evidence was sufficient to support his convictions of first degree sexual assault and felony child abuse. He specifically argues that there was no physical evidence that he committed the offenses and that the State's case

> primarily consisted of the testimony of the [victim] who gave several different versions of what had occurred ranging from making no statements that anything sexual had occurred to saying there was penetration on two occasions. The fact that the witness contradicted his sworn testimony at his deposition should have ended the inquiry. He was not credible as a matter of law.

Brief for appellant at 18-19.

O'Neal's argument, more plainly stated, is that because the victim initially denied that any sexual assaults had occurred and gave some contradictory testimony at his deposition and trial, the victim was not credible and, because there was no physical evidence that he committed the offenses, the evidence was insufficient to sustain his convictions. These arguments present two issues for this court to resolve: (1) the effect of the lack of physical evidence in this case and (2) the effect of any contradictory statements by the victim during the course of trial as related to an insufficiency of the evidence claim.

First, we reject O'Neal's argument that the evidence was insufficient to support his conviction for first degree sexual assault because the victim's testimony was not supported by corroborating physical evidence. In *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022), the Nebraska Supreme Court specifically held that, since 1989, the State has not been required to corroborate the victim's testimony in cases of first degree sexual assault; if believed by the finder of fact, the victim's testimony alone is sufficient. See also Neb. Rev. Stat. § 29-2028 (Reissue 2016) (corroboration of sexual assault victim's testimony not required). This argument fails.

Second, regarding O'Neal's claim that the victim's testimony was not credible, we note that a similar argument was made in *State v. Samayoa*, 292 Neb. 334, 346, 873 N.W.2d 449, 457 (2015) wherein the defendant argued that the victim's testimony regarding incidents of sexual assault "contained too many inconsistencies to support [the defendant's] convictions." But the

Nebraska Supreme Court noted that "this argument goes to the credibility of [the victim] as a witness, which we do not consider. An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact." *Id*. Likewise, in the instant case, O'Neal's claims that the victim's testimony was not credible because the victim initially denied that any sexual assaults had occurred and provided some contradictory testimony during trial goes to the victim's credibility as a witness, which we do not consider. This assignment of error fails.

Notwithstanding O'Neal's more general claim that there was insufficient evidence to support the verdict, we find to the contrary. The evidence, when viewed in the manner most favorable to the State, supports O'Neal's convictions of first degree sexual assault and felony child abuse. As charged in the amended information, in order to establish that O'Neal had committed the offense of first degree sexual assault, the State was required to prove that O'Neal, a person 25 years of age or older, subjected the victim, a person of at least 12 years of age but less than 16 years of age, to sexual penetration. See Neb. Rev. Stat. § 28-319(1) (Reissue 2016). Sexual penetration is defined as

> sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's or victim's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical, nonhealth, or nonlaw enforcement purposes. Sexual penetration shall not require emission of semen[.]

Neb. Rev. Stat. § 28-318(6) (Cum. Supp. 2022).

Here, the evidence established that O'Neal, a person 25 years of age or older, subjected the victim, a person at least twelve years of age but less than 16 years of age, to sexual penetration. The victim testified that O'Neal touched the victim's penis with his hand and his mouth and forced the victim to touch O'Neal's penis with the victim's hand and mouth on at least two occasions. Although O'Neal argues that the victim was not credible, the credibility and weight of the victim's testimony was a matter for the finder of fact, and when the evidence is viewed in the light most favorable to the State, we find that the evidence was sufficient to support O'Neal's convictions for first degree sexual assault of a child.

O'Neal was also convicted of child abuse. Nebraska's child abuse statute, found at Neb. Rev. Stat. § 28-707 (Cum. Supp. 2022), provides in relevant part:

> (1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:
> (a) Placed in a situation that endangers his or her life or physical or mental health;
> (b) Cruelly confined or cruelly punished;
> (c) Deprived of necessary food, clothing, shelter, or care;
> (d) Placed in a situation to be sexually exploited through sex trafficking of a minor as defined in section 28-830 or by allowing, encouraging, or forcing such minor child to engage in debauchery, public indecency, or obscene or pornographic photography, films, or depictions;
> (e) Placed in a situation to be sexually abused as defined in section 28-319, 28-319.01, or 28-320.01; or

(f) Placed in a situation to be a trafficking victim as defined in section 28-830.

. . . .

(4) Child abuse is a Class IIIA felony if the offense is committed knowingly and intentionally and does not result in serious bodily injury as defined in section 28-109 or death.

The evidence at trial, when viewed in the light most favorable to the State, established through the victim's testimony that O'Neal sexually assaulted the victim, a minor child, by touching the victim's penis with O'Neal's hand and his mouth and forcing the victim to touch O'Neal's penis with the victim's hand and mouth on at least two occasions. The credibility and weight of the victim's testimony was a matter for the finder of fact, and when the evidence is viewed in the light most favorable to the State, we find that the evidence was sufficient to support O'Neal's conviction for felony child abuse under several of the subsections of § 28-707.

## VI. CONCLUSION

For the reasons stated above, we find that the court did not err in failing to hold an evidentiary hearing in connection O'Neal's request to discharge his trial counsel; in refusing to disregard the testimony of the victim for providing some contradictory testimony during trial; and in failing to allow counsel to impeach the victim. Further, the evidence was sufficient to support O'Neal's convictions for first degree sexual assault and felony child abuse. We therefore affirm O'Neal's convictions and sentences.

AFFIRMED.